UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
JOHN DOE,
                        Plaintiff,

            -v-                                        24-CV-6117 (JPO)

INTEL CORP., *et al.*,                                 OPINION AND ORDER
                        Defendants.
―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

Plaintiff brings this action asserting claims against his former employer and colleagues for discrimination and retaliation based on Plaintiff's race, ethnicity, religion, and national origin. Alleging that the litigation involves sensitive and personal matters, disclosure of which would subject Plaintiff to a risk of physical and mental harm, Plaintiff requests leave to proceed anonymously. (ECF No. 6.) The Court previously granted that request on a provisional basis, pending any objection by Defendants. (ECF No. 16.) Defendants subsequently objected. (ECF No. 30.) Because the Court finds that the strong interests in favor of open proceedings outweigh Plaintiff's interest in anonymity, the Court now denies Plaintiff's request.

**I.   Background**

The Complaint alleges the following facts.[1] Plaintiff John Doe is a "Jewish Israeli citizen who proudly served with the Israel Defense Forces," and who has family members currently living in Israel. (ECF No. 1 ("Compl.") ¶ 59.) Plaintiff first moved to the United States to "establish [a] U.S. market presence" for a "Startup" he was working for at the time. (*Id.* ¶¶ 66-

---

[1] At this stage in the proceedings, the Court has no basis for making findings of fact, and accordingly "takes no position with respect to the merits of the action." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006). This section of the opinion "is set forth as necessary background to understanding the basis for the motion before the Court." *Id.*

67.) Shortly thereafter, Intel acquired the company and Plaintiff "began working for Intel as an Engineering Lead." (*Id.* ¶¶ 68-69.) In the ensuing years, Plaintiff had a successful career at Intel and was ultimately promoted to "Vice President of Engineering." (*Id.* ¶ 76.)

Following the October 7, 2023 attack on Israel by Hamas, Defendant Badr, "the Vice President of Customer Success at Intel" (*id.* ¶ 77), allegedly made a number of statements and interacted with a number of social media posts supporting Hamas's actions and "advocat[ing] for and celebrat[ing] the murder of Israelis like [Plaintiff] and the members of his family" (*id.* ¶¶ 85-100). On January 29, 2024, Badr became Plaintiff's direct manager. (*Id.* ¶¶ 102-3.) Plaintiff complained, but Intel "did not respond." (*Id.* ¶¶ 105-10.) Subsequently, Badr took actions to "mak[e] [Plaintiff's] professional life as intolerable as possible because of his Jewish and Israeli heritage" (*id.* ¶ 112), including acting "frigid and isolating" toward Plaintiff (*id.* ¶ 113), asking Plaintiff which of his fellow employees were Israeli and making disparaging comments about them (*id.* ¶ 114), refusing to approve Plaintiff's expense requests (*id.* ¶ 115), interrupting Plaintiff in meetings (*id.* ¶ 116), and interfering with Plaintiff's job responsibilities (*id.* ¶ 117). Plaintiff again complained and Intel conducted an investigation. (*Id.* ¶ 118.)

Following the investigation, "Intel took no corrective action against Badr" (*id.* ¶ 129), but, on April 2, 2024, Plaintiff was "laid-off" (*id.* ¶ 124). When Plaintiff complained, "Intel then created a new job" for him, albeit "with a significant pay cut." (*Id.* ¶ 131-32.) Badr allegedly replaced Plaintiff in his old position with a new employee, "Ahmed," who "shared the same anti-Israel sentiments as Badr." (*Id.* ¶ 133.)

On July 3, 2024, Intel's Human Resources department informed Plaintiff "that his retention bonus was being cancelled." (*Id.* ¶ 136.) Plaintiff claims that this was done as "punish[ment] for protesting discrimination." (*Id.* ¶ 139.)

## II.  Legal Standard

Federal Rule of Civil Procedure 10(a) requires that "all the parties" be named in the title of the complaint.  "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 188-89 (2d Cir. 2008).  However, courts recognize exceptions to this rule.  Thus, "when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. at 189.  To facilitate this balancing, the Second Circuit in *Sealed Plaintiff* identified a non-exhaustive list of factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
>
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

>  (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 190 (alterations, citations, and quotation marks omitted). "[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id*. at 191 n.4

### III.   Discussion

At the outset, the Court notes that Plaintiff has "invoked the public forum of litigation in which there is a strong presumption of public access." *Doe 1 v. United States*, No. 24-CV-1071, 2024 WL 1885188, at *6 (S.D.N.Y. Apr. 30, 2024). "[P]seudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption." *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020). Arguing that he overcomes this strong presumption, Plaintiff claims (1) that his case involves sensitive, personal matters, and (2) that there is a real risk of harm should his identity be revealed.

#### 1.   Matters of a Sensitive and/or Personal Nature

Plaintiff argues first that the litigation concerns sensitive and personal matters. Courts in this Circuit have found in the past that such matters include "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *N. Jersey Media Grp., Inc. v. Doe Nos. 1-5*, No. 12-CV-6152, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012). But the mere "potential for embarrassment or public humiliation does not, without more, justify a request for anonymity, *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14-CV-5601, 2015 WL 7017431, *3 (S.D.N.Y. Nov. 12, 2015), and only in "extreme" cases is "the sensitivity of the subject matter . . . so great as in itself to justify pseudonymity without a specific showing of harm." *Doe v. Del Rio*, 241 F.R.D. 154, 160 (S.D.N.Y. 2006).

4

Plaintiff appears to recognize, as he must, that mere membership in a protected class based on race, ethnicity, religion, or national origin is not typically considered "highly sensitive." (Mem. at 8 ("Under normal circumstances, being a Jewish-Israeli former IDF soldier may not be considered highly sensitive.").) Nor is such an identity converted into a sensitive matter just because a plaintiff has filed a discrimination or retaliation lawsuit. *See, e.g.*, *Doe v. Fedcap Rehab. Servs.*, No. 17-CV-8220, 2018 WL 2021588, at *3 (S.D.N.Y. Apr. 27, 2018).

Rather, Plaintiff argues that "these are not normal times" and the "current political climate" means that Jewish and Israeli people are more likely to be attacked. (Mem. at 8-9.) The Court does not view this as an independent allegation of sensitivity, akin to having experienced sexual harassment, *cf.* *Trooper 1 v. N.Y. State Police*, No. 22-CV-893, 2022 WL 22869548, at *1 (E.D.N.Y. June 9, 2022) (Merkl, M.J.), or having a stigmatized medical condition, *cf.* *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 109 (E.D.N.Y. 2003). Rather, the Court understands the alleged sensitivity of Plaintiffs' claims as stemming from his fears of harm, which are already accounted for in the second and third *Sealed Plaintiff* factors. Therefore, the Court does not view the first factor as independently weighing in favor of anonymity.

### 2. Risk of Harm to Plaintiff

Plaintiff's strongest argument in support of anonymity is his alleged fear of harm. Plaintiff points to a number of instances of harassment of and attacks on individuals in New York based on their Jewish identity or their public support for Israel. (Mem. at 5-6.) Plaintiff extrapolates from these events that "he and his family would be at significant risk of physical harm by . . . anti-Israel protestors in the United States." (*Id.* at 10.) Plaintiff believes that, because "anti-Israel protestors . . . have shown through their past conduct that they will use every tool at their disposal to harm those who challenge their anti-Israel belief systems," "[he] and his

5

family will be subjected [to] a campaign of intimidation and harassment at the very least, and real physical harm and possibly death at the worst." (*Id.*)

While mindful not to suggest that Plaintiff's concerns are "trivial" (*cf. id.* at 6), the Court is also cognizant that an alleged risk of harm cannot justify anonymity when it is "speculative in nature," *Anonymous v. Medco Health Sols., Inc.*, 588 Fed. App'x 34, 35 (2d Cir. 2014) (summary order); *see also Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001) ("[P]laintiff's claim of threatened harm is speculative and exaggerated and . . . the public interest in access to her identity outweighs her desire to pursue this case in relative secrecy."). Courts have found a real risk of harm when, for example, "there is a history of substantiated prior action directed *at plaintiff(s)* from *defendant(s)*." *Doe v. Townes*, No. 19-CV-8034, 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) (Wang, M.J.) (emphasis added). Conversely, courts have rejected claims of harm where they are insufficiently "particularized," provided "without corroboration," or "generalized" and "conclusory." *Doe v. Combs*, No. 23-CV-10628, 2024 WL 863705, at *4 (S.D.N.Y. Feb. 29, 2024) (quotation marks omitted).

Notwithstanding the examples of harassment and assault that Plaintiff highlights (Mem. at 6), he has not provided any "direct evidence linking disclosure of [his] name to a specific physical or mental injury" or threat thereof. *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678, 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019); *accord In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250–51 (11th Cir. 2020) (finding an insufficient "nexus between the claimed threats and the disclosure of [the plaintiffs'] identities"); *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1078 (8th Cir. 2024) (holding that, beyond general references to the political climate, "the unnamed plaintiffs do not claim any nexus between the incidents [of harassment] [and] their case"). While the examples of violent attacks that Plaintiff highlights are abhorrent, they were

"not directed at plaintiff or similarly situated individuals[2] and so do[] not demonstrate that plaintiff is at risk of harm." *Doe v. City Univ. of N.Y.*, No. 21-CV-9544, 2021 WL 5644642, at *3 n.2 (S.D.N.Y. Dec. 1, 2021). Plaintiff claims that "growing unrest . . . floods the streets of New York on a daily basis." (Mem. at 12.) But the evidence that Plaintiff provides—several New York Post articles[3] and an Anti-Defamation League dataset of antisemitic incidents[4]—does

---

[2] Individuals are not "similarly situated" simply because they belong to the same protected group. Plaintiff has not pointed to any examples of individuals being harassed or attacked based on their filing of a discrimination lawsuit or similar conduct.

[3] Plaintiff cites several instances of vandalism (Mem. at 6 nn. 9-10), a clash between street protestors (*id.* at 6 n. 11), and two assaults (*id.* at 6 nn. 8, 12).

[4] Plaintiff cites data purporting to show that "antisemitic incidents in 2023 rose by 110% in New York, reaching 1,218 total incidents—the highest number ever recorded." Anti-Defamation League, *Antisemitic Incidents in New York Soared 110% in 2023, Shattering Previous Records and Sparking Deep Concern* (April 16, 2024), https://nynj.adl.org/news/2023-audit-ny/ (last accessed Oct. 16, 2024). The data appears to contain at least a substantial number of incidents that do not plausibly constitute cognizable harm for purposes of Plaintiff's motion. For example, the list includes a number of incidents that appear to primarily involve the exercise of First Amendment protected speech, such as distributing pamphlets, posting political statements on an online forum, and a student organization disinviting "Zionists" from an event it hosted. *See id.* Similarly, Plaintiff also cites articles recounting instances of verbal harassment where individuals wearing IDF clothing were called names, including "baby killing Jewish coward" and "white piece of shit." (Mem. at 5 n.7). The kind of harm that might result from such speech and advocacy cannot justify withdrawing Plaintiff's lawsuit from public scrutiny. *See, e.g.*, *City Univ. of N.Y.*, 2021 WL 5644642, at *4 (finding that a general "risk of 'ostracization and emotional harm'" did not justify anonymity without further "evidence of . . . specific harm" that the plaintiff would suffer). The Second Circuit has long held that "the First Amendment . . . secure[s] to the public and to the press a right of access to civil proceedings," and that "adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Such access may be restricted only if some "higher values in the First Amendment framework so demand." *Id.* While some of the conduct in Plaintiff's dataset—such as violence—is not protected by the First Amendment, "[a]s a general matter . . . in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 313, 322 (1988). Indeed, the First Amendment generally protects individuals' right to engage even in speech that the public regards as hateful. *Volokh v. James*, 656 F. Supp. 3d 431, 445 (S.D.N.Y. 2023); *see also Matal v. Tam*, 582 U.S. 218, 245-46 (2017). The Court rejects Plaintiff's contention that his name may be withheld from

not satisfy his burden of demonstrating that he personally faces a non-speculative risk of harm. Plaintiff has not shown that the risks he faces are so substantially greater than those faced by members of other protected groups to justify a departure from the well-settled norm that plaintiffs bringing discrimination claims must publicly disclose their identities. Indeed, a central reason why protected classes like race and religion are protected at all is because such groups are more vulnerable to precisely the kind of harassment, intimidation, and even violence that Plaintiff highlights in his briefs. Were the general existence of discrimination a sufficient reason to proceed anonymously, then scarcely any discrimination cases would be exempt.[5] Nor can the Court discern any limiting principle that would justify granting Plaintiff's request but denying anonymity to other plaintiffs bringing racial, ethnic, religious, or national origin discrimination claims. And even if Plaintiff has taken steps to keep his participation in this lawsuit secret from the public, Plaintiff does not allege that he has kept secret his political views, his Jewish identity, his Israeli nationality, or his past IDF service. (*Cf.* Mem. at 11.) Because much of the "unrest" that Plaintiff highlights is targeted at Jews and Israelis merely based on their identities,[6] it is unclear what "incremental injury" would be caused by public disclosure of Plaintiff's participation in this lawsuit. *Doe 1 v. Branca USA, Inc.*, No. 22-CV-3806, 2022 WL 2713543, at *3 (S.D.N.Y. July 13, 2022) (quoting *Doe v. Freydin*, No. 21-CV-8371, 2021 WL 4991731 (S.D.N.Y. Oct. 27, 2021)).

---

public scrutiny in order to shield him from the risk of unseemly, vituperative, or offensive criticism that might be directed at him based on the views expressed in his lawsuit.

[5] Indeed, the history of civil rights litigation is replete with examples where named plaintiffs have borne a risk of reprisal. *See, e.g.*, Library of Congress, Brown v. Board *at Fifty: 'With an Even Hand'* (2004), https://www.loc.gov/exhibits/brown/brown-aftermath.html.

[6] (*See, e.g.*, Mem. at 3 n.8 (describing an assault perpetrated because the victim "look[ed] Jewish").)

Moreover, as Defendants note, Plaintiff's interest in anonymity due to the risk of harm is not one-sided; rather, it must be balanced against the corresponding interest that Defendants face having been publicly named in Plaintiff's suit. *See City of New York*, 201 F.R.D. at 102 ("[Defendants] have no lesser interests in their reputations than plaintiff . . . and they were not afforded an opportunity to seek to have their names withheld from the public. If we are to have a policy of protecting the names of individual litigants from public disclosure, there is a very substantial interest in doing so on a basis of equality.") The individual Defendants here are, like Plaintiff, members of protected groups, and plausibly also face risks of harassment and violence. (*See, e.g.*, ECF No. 30-1 (attesting that at least one Defendant has already received harassing communications and a death threat).)

The Second Circuit has instructed courts to place special emphasis on the risk of harm to "innocent non-parties" should anonymity be denied. *Sealed Plaintiff*, 537 F.3d at 190. Here, Plaintiff alleges that, because his family lives in Israel, disclosure of his identity would subject them to a heightened risk of harm at the hands of Hamas. (Mem. at 3, 7.) Ultimately, these claims too conclusory and speculative to bear the weight that Plaintiff seeks to place on them. Plaintiff has provided no evidence that Hamas is aware of proceedings in the Southern District of New York, that Hamas would be interested in Plaintiff's lawsuit, or that Hamas has the capacity to locate and attack Plaintiff's family members. The events of October 7 also, as Plaintiff recognizes, demonstrate that Hamas is already committed to perpetrating violent attacks on Israelis. Therefore, it is again unclear what "incremental" risks would come with disclosure. *See Branca USA*, 2022 WL 2713543, at *3. Without further, specific evidence, the Court agrees with Defendants that such claims are too speculative to support anonymity in this case.

The second and third *Sealed Plaintiff* factors thus weigh only modestly, if at all, in favor of non-disclosure.

### 3. Countervailing Interests

The Court first reiterates the "universal public interest in access to the identities of litigants." *Fedcap*, 2018 WL 2021588, at *2 (quoting *Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011)). While that interest is no greater here than in other cases, it is the foundation of the general presumption in favor of disclosure and bears significant weight. *Id.*

Defendants, too, would be substantially prejudiced if the Court were to permit Plaintiff to proceed anonymously. While Defendants already know Plaintiff's identity, such knowledge is not enough to negate prejudice. *Doe v. Juan Gonzales Agency Corp.*, No. 21-CV-00610, 2022 WL 3100669, at *4 (S.D.N.Y. Aug. 4, 2022). Indeed, "case law recognizes a defendant's interest in confronting an identified accuser," including publicly,[7] *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), and "basic fairness dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names," *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)) (cleaned up). Disclosure also deters plaintiffs from fabricating or embellishing their claims, *Delta Airlines*, 310 F.R.D. at 225, and anonymity might prevent "yet unknown witness[es]" from, upon learning about a case, "step[ping] forward with valuable information," *Del Rio*, 241 F.R.D. at 159. Finally, though insufficient to support disclosure on its own, anonymity imposes "non-trivial" costs on both the parties and the Court associated with "sealing or redacting court filings." *Fedcap*, 2018 WL 2021588, at *2.

---

[7] In *Delta Airlines*, the court highlighted the risks of allowing only one party to publicly discuss the details of a lawsuit, expressing concern that "[a]n aviation trade journal has already published an article on this case, naming Delta but not Doe." 310 F.R.D. at 225 n.1.

    **4.**  **Mitigating Factors**

  The other *Sealed Plaintiff* factors are either neutral or weigh slightly in favor of disclosure. The suit here is primarily factual, not legal, in nature, and is against private parties rather than the government. Both weigh slightly in favor of disclosure. Plaintiff has also not raised any arguments that he is particularly vulnerable to harm, other than by virtue of his membership in a protected class, nor that his age is relevant. Finally, even assuming that Plaintiff's identity is currently confidential,[8] and that there are no alternative mechanisms for protecting confidentiality, those factors are insufficient on their own to tip the balance in Plaintiff's favor.

    **5.**  **Weighing of the Interests**

  Overall, there is no doubt that Plaintiff's allegations are emotionally and politically charged, and that Plaintiff is a member of certain groups subject to discrimination. That, however, is true of a plethora of cases in the federal courts and has generally not been understood to authorize anonymous pleading. Rather, the countervailing interests of the public and the defendants in public access to the courts undergirds a "strong default rule that parties must proceed under their real names." *Fedcap*, 2018 WL 2021588, at *3. The Court is not persuaded to depart from that rule here.

  As this Court previously remarked in a similar case,

> Plaintiff wants what most employment-discrimination plaintiffs would like: to sue his . . . employer without future employers knowing about it. But while that desire is understandable, our system of dispute resolution does not allow it. Defendants—including two individuals—stand publicly accused of discrimination and harassment, including detailed allegations of misconduct. Defendants do not have the option of proceeding pseudonymously. Allowing Plaintiff to proceed anonymously would put Defendants at a genuine disadvantage . . . . Courts allow

---

[8] Plaintiff has not alleged that he has kept certain relevant features of his identity confidential (e.g., that he is Jewish, Israeli, and worked for the IDF).

11

such an imbalance only in unique circumstances, and Plaintiff has not shown that this is one of those special cases.

*Id.* Ultimately, "the Court finds that Plaintiff[] [has] not provided sufficient justification to overcome the people's right to know who is using their courts." *Doe 1*, 2024 WL 1885188, at *6.

### IV.  Conclusion

For the foregoing reasons, Plaintiff's motion to for leave to proceed anonymously is DENIED.

Plaintiff shall file a letter with the Court within 14 days after the date of this opinion and order indicating whether Plaintiff intends to proceed with this suit using his real name. If Plaintiff intends to proceed, Plaintiff's real name will be used in all future filings and Plaintiff shall file an amended complaint with his real name within 14 days from the date of the letter.

SO ORDERED.

Dated: October 22, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge